■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CLEVEN MOORER, Appellant.—Appeal by defendant from a judgment of the Supreme Court, Westchester County, rendered July 23, 1979, convicting him of criminal possession of a controlled substance in the fifth degree, criminal possession of a controlled substance in the sixth degree, and escape in the second degree, upon a jury verdict, and imposing sentence. Judgment reversed, on the law, and new trial ordered. The facts upon which the judgment is based have been considered and are determined to have been established. We have examined all of defendant's contentions and find three

which entitle him to reversal and a new trial. In the course of the *voir dire* examination of prospective jurors, the defendant challenged two for cause. The first, Marcelle Caccioppoli, a high school guidance counselor, stated that she had worked with students who used drugs and she believed the use of cocaine was "inadvisable." The following exchange then occurred: "MR. WEISFUSE [Defense Counsel]: Everyone has developed life experience with a different viewpoint. The point is whether it might affect them or whether they might be partial to one side or another. Really everybody has to make up your [sic] own individual minds [sic] now because it's too late after the twelve start. If there is any reservation at any point that you feel that would affect you, you have to decide really definitely now. MS. CACCIOPPOLI: I really would have to say in terms of the three counts that were referred to, that I might hold certain views that might influence me. MR. WEISFUSE: So you might not be able to be fair and impartial in this case? MS. CACCIOPPOLI: I think that might be the case. THE COURT: Mr. Weisfuse, let me put this to rest once and for all. I am going to direct this to all twelve jurors who are now being questioned. Do any of you have a state of mind that is likely to preclude you from rendering an impartial verdict based upon the evidence that will be adduced at this trial? Please consider that carefully. What are we saying? Do you now have a state of mind which state of mind is likely to prevent you from rendering a verdict that is completely impartial and based solely on the evidence adduced at the trial? Do you see the elements of that? Is there anyone who feels that way now? * * * MS. CACCIOPPOLI: I think I would have to say, based on my work experience, not my family relationships, that it might cause me to have certain views. THE COURT: We all have views. MS. CACCIOPPOLI: I realize that. However, I think that there might be certain evidence presented in the case that might be consistent with certain views that I already have that might cause me not to then be able to look as fairly at the situation as I think the defendant deserves, because of my experience with young people, and the daily contacts that I have in working with them. THE COURT: So you feel that your present state of mind is one which perhaps may lead you to render a verdict which is other than impartial and not based solely on the evidence? MS. CACCIOPPOLI: I think as long as there is a question in my mind, you know, I feel that that should not be there, because of things that might be brought out in the case in relation to other people, because in the indictment you made reference to not just possession for personal use, but other involvement. THE COURT; I said that attempt to sell. MS. CACCIOPPOLI: Yes, I understand that. You know, I am just trying to explain how I feel, that I might have certain views that might cause me not to look at the situation as impartially as I feel the defendant deserves this situation. THE COURT: I am going to define for you, for instance, what intent is in the law. Will you take my law on intent and apply it here, even though you may disagree with it? MS. CACCIOPPOLI: Oh, yes. I would certainly defer to you and the law." The second challenged juror was Louis Tripato. Mr. Tripato advised the court that he had been the victim of "a number of crimes" and that, in the preceding 10 years, his home had been burglarized on some six occasions. The court thereupon inquired of him as follows: "THE COURT: Would that cause you to enter into this case with a preconceived mental attitude which might cause you to be unfair—not unfair, but to reach a conclusion based upon this mental attitude rather than upon what you hear from the witnesses and from the documents? MR. TRIPATO: I would try not to let it affect me, but I can't say for sure. THE COURT: I know you are going to try, but do you think you would be successful? MR. TRIPATO: To tell you the truth, I don't know. I don't know

whether I would be. THE COURT: That is an understandable answer. MR. TRIPATO: I can't say definitely right now that I won't. I can't say that I will. THE COURT: If I asked if you could now run the hundred in 9.6, you would probably say very definitely I cannot. MR. TRIPATO: Definitely not. THE COURT: You would try. On the other hand, if I said can you walk the mile in 30 minutes, you will say I'll try, I don't know. But you see the difference. One is an absolute and the other is a maybe. I take it that at this juncture yours is just a maybe. You will try to be completely and absolutely impartial, but at the present juncture you don't know. MR. TRIPATO: Yes. THE COURT: Your mental attitude is such that you could, if you tried. You said you could, anyway. MR. TRIPATO: Yes." Thereafter, defense counsel took up the inquiry as follows: "MR. WEISFUSE: Mr. Tripato, you mentioned all those unfortunate experiences of all those burglaries. Do you think that might in any way affect you in sitting on this case? MR. TRIPATO: Well, at the present time it doesn't. It wouldn't affect me at present. But I can't say that if something is said during the trial that my previous experience might not slant my thinking in a direction other than what it should have been. Let's say it would be unconsciously done, but I would try to be objective. I can't say for sure that my mood at the moment wouldn't slant my thinking one way or the other." Defendant's challenges for cause to Ms. Caccioppoli and Mr. Tripato were overruled, and he subsequently exercised peremptory challenges against both of them. In our view, the court's failure to sustain the challenges for cause was error. The two prospective jurors revealed states of mind likely to preclude them from rendering an impartial verdict based upon the evidence adduced. Such a juror may be challenged for cause unless he declares on oath and to the satisfaction of the court that he believes his state of mind will not influence his verdict and that he can render an impartial verdict according to the evidence. (See *People v Biondo,* 41 NY2d 483, 484, cert den 434 US 928; *People v Branch,* 46 NY2d 645, 650.) The two challenged jurors in the instant case made no such declaration. And neither Ms. Caccioppoli's agreement to defer to the court on matters of law nor Mr. Tripato's promise to try to be objective satisfied the requirement that a venireman expressly declare his belief that his biased state of mind will not affect his judgment. (See *People v Culhane,* 33 NY2d 90, 107.) Accordingly, it was error to deny the defendant's challenges for cause, and since he exhausted his peremptory challenges before the process of jury selection was completed, the error is reversible. (See CPL 270.20, subd 2; *People v Provenzano,* 50 NY2d 420.) We again express our view that, in order to avoid the possibility of unfairness, Trial Judges should disqualify prospective jurors of questionable impartiality rather than permit them to serve. (See *People v Sellers,* 73 AD2d 697; see, also, *People v Branch, supra,* p 651.) The court also erred when, after allowing cross-examination into certain of defendant's prior convictions when he testified on his own behalf (see *People v Sandoval,* 34 NY2d 371), it failed to charge the jury that such prior convictions could only be used in evaluating defendant's credibility, and that they could not be used as evidence of defendant's guilt. The court made no reference to defendant's prior convictions in its charge, although defendant had duly submitted a request to charge containing a limiting instruction on the subject. When a defendant so requests, evidence admissible for a limited purpose must be accompanied by a limiting instruction *(People v Reyes,* 64 AD2d 657), and the failure here to give such limiting instruction is reversible error (see *People v Boone,* 56 AD2d 892). Finally, it was reversible error to allow into evidence a notebook found on defendant's person after his arrest which indicated that certain transactions had taken place. The effort

by the prosecutor to connect the notebook to prior drug sales was highly prejudicial and greatly outweighed the probative value of this evidence (see *People v Jones*, 62 AD2d 356). Hopkins, J. P., Damiani, O'Connor and Weinstein, JJ., concur.