THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOHNNY D. SIMMONS, Appellant.

Defendant has been convicted of manslaughter in the second degree, as a lesser included crime under the indictment, in connection with the stabbing death of his brother-in-law. On these appeals, he contends that his trial counsel's performance was constitutionally deficient, that there were various errors in the trial court's instructions to the jury, and that the trial prosecutor committed gross misconduct in his summation. Following a thorough review of the record, we find that there should be a reversal.

Trial counsel conducted but a single 15- to 20-minute interview with his client some five months prior to trial, and failed to interview other available witnesses or conduct any legal research. It is evident that such preparation cannot, in any meaningful sense, be considered adequate for the defense of a serious felony charge (*see, People v Droz,* 39 NY2d 457, 462; *Coles v Peyton,* 389 F2d 224, 226). The lack of preparation was clearly prejudicial because counsel's opening statement put forth a defense which was at odds with the defendant's subsequent testimony and counsel failed to register appropriate protest to erroneous jury instructions and prosecutorial misconduct (*cf.*

*People v Karamanites,* 104 AD2d 899; *People v Wagner,* 104 AD2d 457; *People v Moore,* 102 AD2d 898).

In instructing the jury on the justification defense the Trial Judge explained that the "basic test of reasonableness is what the ordinary prudent man would have done under the circumstances", an objective standard rather than the subjective standard mandated by statute and decisional law (Penal Law § 35.15 [2]; *People v Miller,* 39 NY2d 543; *People v Long,* 104 AD2d 902; *People v Wagman,* 99 AD2d 519; *People v Desmond,* 93 AD2d 822; 1 CJI [NY] 35.00 at 848). In addition, the court, by twice using the phrase "ordinary garden variety incident" as a definition of what the crimes it submitted to the jury were not, reduced the degree of culpability to a standard below that required for a finding of criminal "recklessness" (Penal Law § 15.05 [3]; *see, People v Warner-Lambert Co.,* 51 NY2d 295, *cert denied* 450 US 1031; *People v Montanez,* 41 NY2d 53). The phrase "garden variety" means "of a familiar kind" or "commonplace" (Webster's Third New International Dictionary 935) which is not necessarily a measure of "the standard of conduct that a reasonable person would observe" (Penal Law § 15.05 [3]). Review of these errors in the interest of justice is warranted despite the absence of an objection.

Finally, we deplore the extensive misconduct committed by the trial prosecutor during summation which, in our view, undermined the jury's ability to fairly evaluate the evidence. The prosecutor, *inter alia,* became an unsworn witness by arguing facts not in evidence (*People v Ashwal,* 39 NY2d 105; *People v Mejias,* 72 AD2d 570; *People v Reyes,* 64 AD2d 657), expressed a personal belief in defendant's guilt (*People v Demko,* 71 AD2d 608; *People v Sharp,* 71 AD2d 1034), mischaracterized and denigrated the defense (*People v Bennett,* 65 AD2d 801), and appealed to the jurors' emotions (*People v Wallason,* 62 AD2d 1026; *People v Garcia,* 40 AD2d 983). Because this was a close case, the errors cannot be considered harmless and notwithstanding counsel's failure to object, which we deem further evidence of ineffectiveness, we exercise our interest of justice powers to review them. Titone, J. P., Mangano and Brown, JJ., concur.

Weinstein, J., dissents, and votes to affirm the judgment and order, with the following memorandum: While defendant's trial was clearly not error free, I cannot concur that reversal is warranted under these circumstances.

Defendant stands convicted of having stabbed his brother-in-law, Ramon Nero, with a kitchen knife 14 times, resulting in his death. Prior to his altercation with defendant, the victim had

imbibed a quantity of alcohol which, while insufficient to cause his intoxication, sufficed to remove his inhibitions and impair his ability to act. As per defendant's direct testimony, he had picked up a knife to defend himself and decedent accidentally fell upon it. The knife pressed deeply into decedent's chest, after his fall, by the force of his weight. Defendant stated that he was afraid of decedent who had shown himself to be a "very wild and a vicious guy" while drinking. He claimed that his infliction of the fatal wound had been entirely accidental. A somewhat different version was offered by defense counsel who, in the course of his opening statement, announced that defendant had inflicted the stab wounds in self-defense.

Following his conviction, defendant moved to vacate the judgment pursuant to CPL 440.10 on the ground that he was denied effective assistance of counsel in violation of the Federal and State Constitutions. Specifically, defendant maintained that in the six-month interval between his having been assigned an attorney and the start of trial, his attorney met with him on only two occasions. Both visits were of limited duration and, in defendant's opinion, on neither occasion did counsel "adequately discuss the case" with him.* As per defendant's reasoning, assigned counsel's lack of preparation led to several significant errors, the most prejudicial of which was the discrepancy between his opening statement and defendant's actual trial testimony. The resulting inconsistency allegedly undermined the credibility of defendant's testimony as well as the general efficacy of the defense as a whole.

While a more thorough conference between counsel and client prior to trial could have averted such a situation, this was not so egregious an error as to have deprived defendant of meaningful representation (*People v Baldi,* 54 NY2d 137, 146-147). Nor was counsel's account totally at odds with defendant's explanation (*cf. People v Zaborski,* 59 NY2d 863). It is not inconceivable that, in the course of defending himself against an aggressive and physically superior assailant, defendant accidentally caused the death of that assailant.

In any event, there exists an ample basis on record to allow a jury to conclude that defendant's action in stabbing decedent 14 times constituted a great deviation from the standards of conduct that a reasonable person in defendant's circumstances should have observed and that defendant consciously disregarded that risk. Nor has defendant demonstrated a reasonable

---

\* The fact that defendant, at a subsequent hearing in a coram nobis proceeding, testified that his assigned counsel interviewed him only once before trial casts some doubts with respect to his memory and his credibility.

probability that the end result would have been different absent this and other lapses on the part of assigned counsel (*Strickland v Washington,* 466 US 668, __, 104 S Ct 2052, 2067).

Defendant has failed to preserve for appellate review his objections to the court's charge or to the alleged instances of prosecutorial misconduct. Nor is it appropriate, in my view, to reverse the judgment in the interest of justice. The charge, taken as a whole, adequately apprised the jurors of the correct legal principles to be applied to the facts of this case. Without wishing to condone or encourage such overzealousness as was, on occasion, evinced by the prosecutor in this case, I do not view his comments, either individually or in the aggregate, as being so heinous as to warrant reversal (*see, People v Crimmins,* 36 NY2d 230). Neither these comments nor defense counsel's failure to raise timely objections to them deprived defendant of his right to a fair trial.

